UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAMONT BEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CROWN ASSET MANAGEMENT, LLC,<br><br>Defendant. | Case No. 2:20-CV-715<br>Cat 7<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lamont Bey ("Bey" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Crown Asset Management, LLC ("Crown" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This action is brought against Crown for its violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. §§ 2270 *et seq.*, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201 *et seq*.

## JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction of Plaintiff's claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

3. The Court has subject matter jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1332 because there are 100 or more class members, at least one class member is a citizen of a state different from Defendant, and the matter in controversy exceeds $5 million, exclusive of interest and costs.

4. The Court also has subject matter jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendant because the claims at issue arose in this district and Defendant does substantial business in this district.

6. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events and/or omissions at issue occurred in this district.

## PARTIES

7. Bey is a natural person residing in Allegheny County, Pennsylvania.

8. Crown is a limited liability company with its principal place of business in Duluth, Georgia.

9. Crown purchases defaulted consumer debt to collect debt for profit.

10. Crown purchases defaulted consumer debt for pennies on the dollar.

11. Crown collects the debt it purchases, either directly or indirectly, by calling, sending letters to, and filing lawsuits against Pennsylvania consumers.

12. Crown uses instrumentalities of interstate commerce, such as telephone, mail, and the internet, to collect the debt it purchases.

## THE CONSUMER DISCOUNT COMPANY ACT ("CDCA")

13. The CDCA is a consumer protection law enacted by the Pennsylvania legislature in 1937. *See* 7 P.S. §§ 6201-6219.

14. The CDCA regulates personal consumer loans in amounts of $25,000 or less, with interest and fees that aggregate above the six percent interest rate cap provided in the Loan Interest Protection Law ("LIPL"). 7 P.S. § 6203; 41 P.S. § 201(a).

15. Non-bank debt buyers cannot purchase or collect CDCA loans without a CDCA license. 7 P.S. § 6203.A.

16. CDCA licenses are not assignable. 7 P.S. § 6208.

17. CDCA licensees cannot assign their rights under the CDCA to non-CDCA licensed entities. 10 Pa. Code § 41.6(a).

18. The CDCA prohibits unlicensed debt buyers from purchasing CDCA loans from licensed consumer discount companies unless the Department of Banking issues prior written approval. 7 P.S. § 6214.I; 10 Pa. Code § 41.6(a)

19. The Department of Banking issues prior written approval for loan transfers from licensed consumer discount companies to unlicensed debt buyers only if unlicensed debt buyers agree to forgo collecting or receiving previously charged or precomputed interest or fees above the LIPL's six percent interest rate cap. *See* Letter, Department of Banking, p. 22 (Nov. 19, 2001) (attached as Exhibit 1) (stating unlicensed entities buying CDCA loans from consumer discount companies with written approval from the Department must "ensure that every loan contract [they] acquire[] d[oes] not already include in the balance owed interest, fees and other charges in excess of the general usury limit"); Letter, Department of Banking, p. 3 (Sept. 18, 2003) (attached as Exhibit 2) (stating transfer of CDCA loan from a licensed consumer discount company to an unlicensed entity would be approved only if the unlicensed entity "collect[ed] from consumers the general Pennsylvania usury rate of 6% simple interest *per annum*"); Letter, Department of Banking, p. 1 (attached as Exhibit 3) (Jan. 12, 2004) (approving transfer of CDCA loans from a licensed consumer discount company to an unlicensed debt purchaser, and stating that the unlicensed entity "may only collect the general Pennsylvania usury rate of 6% simple interest *per annum* and may not impose any other charges").

20. When CDCA licensees sell CDCA loans to unlicensed debt buyers, the sales are void and legally unenforceable. *Mellish v. CACH, LLC*, No. 19-cv-1217, 2020 U.S. Dist. LEXIS 52383, at *11 (W.D. Pa. Mar. 26, 2020) ("If CACH did not get approval from the Department before purchasing the loan account, then CACH could not lawfully purchase the loan account, thereby causing the sale contract between Springleaf and CACH to have an illegal purpose. The sale contract is therefore void and unenforceable. CACH and Resurgent consequently did not have the legal authority to seek collection on [the plaintiff's] loan account.").

21. Purchasing or attempting to collect CDCA loans without a license, or without the Department of Banking's prior written approval, is a criminal act. 7 P.S. § 6218.

## FACTUAL ALLEGATIONS

22. On December 9, 2019, Crown sued Bey in the Allegheny County Court of Common Pleas (the "Lawsuit").

23. Crown claimed it bought a personal loan allegedly issued to Bey (the "Account").

24. The Account was used for personal, family, or household purposes.

25. The Account allegedly was issued by Prosper Funding LLC and/or Prosper Marketplace, Inc. (collectively "Prosper Entities").

26. The Prosper Entities are licensed under the CDCA.

27. The Account allegedly was financed by WebBank.

28. WebBank is a Utah state-chartered financial institution.

29. According to documents produced in the Lawsuit, all payments on the Account were to be made to the Prosper Entities.

30. According to documents produced in the Lawsuit, all notices concerning the Account were to be made to the Prosper Entities.

31. According to documents produced in the Lawsuit, the interest and fees charged on the Account combined to equal a 23.01% annual percentage rate.

32. In the Lawsuit, Crown sought to collect previously charged interest and fees at the 23.01% annual percentage rate.

33. According to documents produced in the Lawsuit, WebBank allegedly sold the Account to the Prosper Entities.

34. According to documents produced in the Lawsuit, the Prosper entities allegedly sold the Account to Crown.

35. Bey contested the Lawsuit.

36. On February 19, 2020, an arbitration hearing was held in the Lawsuit.

37. At the hearing, the arbitration panel entered judgment in favor of Bey.

38. On March 18, 2020, Crown appealed the arbitration award.

39. The Lawsuit was and continues to be an unlawful, unfair, and deceptive means to collect a debt because Crown could not lawfully purchase the Account.

40. Crown is not and never has been licensed under the CDCA.

41. Crown is not and never has been a federal or state chartered financial institution.

42. Since Crown was and is not licensed as a consumer discount company under the CDCA, since Crown was and is not a federal or state chartered financial institution, and since the Account was purchased from entities licensed under the CDCA, Crown could not lawfully purchase the Account. 7 P.S. § 6214.I; 10 Pa. Code § 41.6(a).

43. The only way Crown could lawfully purchase the Account was with prior written approval by the Department of Banking. *Id.*

44. The Department approves unlicensed loan transfers only if unlicensed entities agree to forgo collecting or receiving previously charged or precomputed interest or fees that exceed the LIPL's six percent interest rate cap. *See* Exhibits 1-3.

45. Crown and the Prosper Entities failed to obtain the required approval for the purchase or sale of the Account from the Department of Banking because, when Crown sued Bey, Crown attempted to collect and receive previously charged interest and fees in excess of the LIPL's six percent interest rate cap.

46. Had Crown or the Prosper Entities obtained written approval for the purchase or sale of the Account, Crown would have been legally and contractually prohibited from seeking to recover the interest and fees Crown sought to collect and receive from Bey. *See* Exhibits 1-3.

47. Crown could not legally purchase the Account and the Prosper Entities could not legally transfer the Account to Defendant.

48. The sale of the Account was void and legally unenforceable.

49. Crown lacked lawful authority to collect the Account from Bey or sue Bey on the Account.

50. Alternatively, in the event Crown obtained written approval from the Department of Banking to purchase the Account, Crown was attempting to collect and receive interest and fees Crown was not lawfully or contractually permitted to collect or receive.

51. The Department approves unlicensed loan transfers only if the unlicensed entity agrees to forgo collecting or receiving previously charged or precomputed interest or fees that exceed the LIPL's six percent interest rate cap. *See* Exhibits 1-3.

52. If Crown and the Prosper Entities actually obtained written approval from the Department of Banking to buy or sell the Account, Crown was lawfully and contractually

obligated to forgo collecting or receiving any previously charged or precomputed interest or fees that exceeded the LIPL's six percent interest rate cap.

53. Yet when Crown sued Bey, Crown attempted to collect and receive previously charged interest and fees that aggregated above the LIPL's six percent rate cap.

54. In the unlikely event Crown could lawfully purchase the Account, Crown could not legally or contractually collect or receive the interest and fees it sought to collect and receive from Bey.

55. Crown engaged in the conduct described herein on a systemic basis.

56. Crown purchases large tranches of defaulted CDCA loans from the Prosper Entities and other licensed consumer discount companies.

57. Crown then tries to collect or receive the full amount of these loans from Pennsylvania consumers.

58. Crown does so despite knowing it is not licensed to purchase such loans.

59. Crown does so despite knowing it does not have approval from the Department of Banking to purchase such loans.

60. Alternatively, in the event Crown obtained approval from the Department to buy CDCA loans, Crown is intentionally disregarding its contractual and lawful obligations as part of those transfers to forgo collecting or receiving previously charged or precomputed interest or fees in excess of the LIPL's six percent interest rate cap.

61. Either way, Crown is intentionally and knowingly acting in the face of its legal obligations and is doing so on a widespread basis.

62. As a result of Crown's actions, Bey was required to retain and pay for the services of an attorney to defend the Lawsuit.

63. Bey lost money as a result of being forced to retain an attorney.

64. Since Crown lacked legal authority to file suit against Bey, as explained above, Bey should not have had to defend the Lawsuit.

65. As a result of Crown's actions, Bey suffered anxiety, stress, confusion, and emotional distress.

66. Since Crown did not have legal authority to file the Lawsuit, Bey was unfairly subjected to legal process, and Crown misrepresented its ability to collect the Account through legal process, or at all.

## CLASS ALLEGATIONS

67. Plaintiff brings this action individually and on behalf of all others similarly situated under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

68. Plaintiff seeks to certify the following classes:

**The Federal Law Class**

All individuals in the state of Pennsylvania who, within the applicable statute of limitations, had Defendant, either directly or indirectly, attempt to collect a loan issued by or purchased from an entity licensed under the CDCA.

**The State Law Class**

All individuals who, within the applicable statute of limitations, lost money or property as a result of an attempt by Defendants to collect on a loan issued by or purchased from an entity licensed under the CDCA.

69. Plaintiff reserves the right to expand, narrow, or otherwise modify the classes as the litigation continues and discovery proceeds.

70. <u>Numerosity:</u> The classes are so numerous that joinder is impracticable. On information and belief, the members of the classes number in the hundreds.

71. <u>Ascertainability:</u> The classes are ascertainable because Defendant, the courts, and the relevant creditors and credit/consumer reporting agencies keep and collect relevant information on each class member.

72. <u>Typicality:</u> Plaintiff's claims are typical of the claims of the classes because the claims of Plaintiff and the classes are based on the same legal theories and arise from the same conduct.

73. <u>Commonality and Predominance</u>: Plaintiff and the class members share numerous common questions of law and fact that will drive the resolution of this litigation and that predominate over any individual issues. For instance, Defendant either is able to lawfully purchase CDCA loans and collect those loans without a CDCA license or it is not. Similarly, Defendant's unlawful purchase of CDCA loans either is void or it is not. Finally, Defendant's attempts to collect on CDCA loans that it has no lawful right to purchase, hold, or collect either violates the law as to Plaintiff and all of the class members or as to none of them. These common questions and other similar common questions of law and fact will drive the resolution of this litigation and predominate over any individual issues.

74. <u>Adequacy:</u> Plaintiff is an adequate representative of the classes because Plaintiff's interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the classes, and Plaintiff has no interests antagonistic to the classes. Plaintiff also has retained counsel who are competent and experienced in the prosecution of class action litigation generally and FDCPA litigation specifically.

75. <u>Superiority:</u> The injury sustained by each class members is not of such magnitude that it is economically feasible to prosecute individual actions against Defendant. Requiring many injured plaintiffs to file individual actions would impose a crushing burden on the court

system and almost certainly lead to inconsistent judgments. By contrast, class treatment presents far fewer management difficulties and provides benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. §§ 1692 *et seq.*

76. This claim is brought individually and on behalf of the Federal Law Class.

77. Bey is a consumer, the Account is a debt, and Crown is a debt collector under the FDCPA. 15 U.S.C. §§ 1692a(3), (5), (6).

78. Crown's actions and practices described herein constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e; and/or unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. § 1692f.

79. As a result of Crown's failure to comply with the provisions of the FDCPA, and the resulting injury and harm Crown's failure caused, Bey is entitled to actual damages, statutory damages, and attorneys' fees and costs under 15 U.S.C. § 1692k.

## COUNT II
### Violation of the Fair Credit Extension Uniformity Act
### 73 P.S. §§ 2270 *et seq.*

80. This claim is brought individually and on behalf of the State Law Class.

81. Bey is a consumer, the Account is a debt, and Crown is a debt collector or creditor under the FCEUA. 73 P.S. § 2270.3.

82. In the event Crown is a debt collector, its actions and practices described herein constitute as unfair and/or deceptive debt collection acts or practices under the FCEUA because they violate 15 U.S.C. §§ 1692e and/or 1692f, as explained above. 73 P.S. § 2270.4(a).

83. In the event Crown is a creditor, its actions and practices described herein constitute as unfair or deceptive debt collection acts or practices under the FCEUA because they constitute as: false, deceptive or misleading representations or means in connection with the collection of a debt; and/or unfair or unconscionable means to collect or attempt to collect a debt. 73 P.S. § 2270.4(b).

84. Crown's use of unfair or deceptive debt collection acts or practices under the FCEUA constitute as violations of the UTPCPL. 73. P.S. § 2270.5(a).

85. Bey lost money or property as a result of Crown's violations.

86. Bey is entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

## COUNT III
### Violation of the Unfair Trade Practices and Consumer Protection Law
### 73 P.S. §§ 201-1 *et seq.*

87. This claim is brought individually and on behalf of the State Law Class.

88. Bey and Crown are persons, the Account arose from the purchase or lease of goods or services primarily for personal, family or household purposes, and Crown's actions and practices described herein were conduct as part of trade or commerce under the UTPCPL. 73 P.S. §§ 201-2(2)-(3), 201-9.2.

89. Crown's actions and practices described herein constitute as unfair methods of competition and unfair or deceptive acts or practices under the UTPCPL because Crown is engaging in fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

90. Crown's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce is in violation of 73 P.S. § 201-3.

91. Bey lost money or property as a result of Crown's violations.

92. Bey is entitled to actual damages, statutory damages, treble damages, and attorneys' fees and costs under 73 P.S. § 201-9.2.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a. An order certifying the proposed classes, appointing Plaintiff as representative of the proposed classes and Plaintiff's counsel as class counsel for the proposed classes;

b. An order awarding actual, statutory, treble, and all other damages available by law, along with pre-and post-judgment interest;

c. An order awarding attorney's fees and costs;

d. An order declaring Defendant's conduct unlawful; and

e. An order awarding all other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: May 15, 2020     By:   */s/ Kevin Abramowicz*
Kevin Abramowicz
Kevin W. Tucker
**East End Trial Group LLC**
186 42nd Street, P.O. Box 40127
Pittsburgh, PA 15201
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com

Eugene D. Frank
**Law Offices of Eugene D. Frank, P.C.**
3202 McKnight East Drive
Pittsburgh, PA 15237
Tel: (412) 366-4276
Fax: (412) 366-4305
efrank@edf-law.com

*Attorneys for Plaintiff*