IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LAMONT BEY,                              )
                                         )
            Plaintiff,                   )        2:20-CV-00715-CCW
                                         )
     v.                                  )
                                         )
CROWN ASSET MANAGEMENT, LLC,             )
                                         )
                                         )
            Defendant.                   )
                                         )

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Crown Asset Management, LLC's ("Crown") Renewed
Motion to Compel Arbitration, or Alternatively, Motion to Dismiss Plaintiff's Complaint Pursuant
to Fed. R. Civ. P. 12(b)(6).  *See* ECF No. 29.  For the following reasons, Crown's Motion will be
granted in part and denied in part.

## I.    Background

In his three count, putative class action complaint, Plaintiff Lamont Bey claims that
Crown's debt collection practices violate various federal and Pennsylvania consumer debt
collection laws and related consumer protection statutes.  *See generally* ECF No. 1.  Count I alleges
violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*;
Count II alleges violations of Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"),
73 P.S. §§ 2270, *et seq.*;  and Count III alleges violations of Pennsylvania's Unfair Trade Practices
and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.  See id.* at ¶¶ 76–92.

Crown moved to dismiss or, in the alternative, compel arbitration.  *See* ECF No. 13.  The
Honorable Arthur J. Schwab, then-presiding, determined that the proper course was for the court
to first determine whether to compel arbitration, and concluded that a factual record was necessary
to decide "whether Plaintiff and Defendant (as the assignee of Prosper) agreed to resolve this

dispute in arbitration."[1]  Accordingly, Judge Schwab denied Crown's motion without prejudice and ordered a period of limited discovery on the arbitration issue.  *See* ECF No. 18.

This case was then transferred to the undersigned, and following the close of the limited discovery period, Crown filed the instant Motion.  The Motion is now fully briefed and is ripe for disposition.

## II.    Standard of Review

Because Crown's renewed Motion comes after the parties have completed a period of discovery on the arbitration issue, Crown's request that we compel arbitration is subject to the same standard of review district courts use when resolving motions for summary judgment.  *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F3d 764, 776 (3d Cir. 2013).  Accordingly, Crown's Motion to Compel will be granted if there is no genuine issue of fact with regard to the existence and enforceability of an arbitration agreement between the parties.  *See id.* at 774–75 (noting that "Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is 'an express, unequivocal agreement to that effect.'") (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co*., 636 F.2d 51, 54 (3d Cir. 1980)).  As such, the Court will view the undisputed facts in the light most favorable to the non-moving party, Mr. Bey, and draw reasonable inferences in his favor.  *See Kaneff v. Del. Title Loans, Inc.,* 587 F.3d 616, 620 (3d Cir. 2009) (citing *Par-Knit*, 636 F.2d at 54).  Finally, summary judgment on the motion to compel would not be warranted where "'the party opposing arbitration can demonstrate, by means of citations to the record,' that there is 'a genuine dispute as to the enforceability of the arbitration clause.'"  *Guidotti,* 716 F.3d at 776 (citation omitted).

---

[1] As discussed more fully below, Prosper Funding LLC ("Prosper"), a non-party, is the entity that originated the personal loan to Mr. Bey that is at issue here.

Because the Court will grant Crown's Motion to Compel Arbitration, we need not address the standard of review applicable to Crown's Motion to Dismiss.

## III.    Material Facts

In November 2017, Mr. Bey used the website prosper.com to apply for and obtain a personal loan (the "Account") issued to him by Prosper Funding LLC ("Prosper").  *See* ECF No. 29-3 at ¶¶ 2–5 (Mr. Bey's Responses to Crown's Requests for Admission).  As part of the terms of using prosper.com, and as required by Prosper to proceed with applying for and receiving the loan, *see* ECF No. 29-5 at ¶ 3 (Declaration of Allyson Bryant), Mr. Bey agreed to a "Terms of Use Agreement" which, in relevant part, provided that disputes between Mr. Bey and Prosper "arising from or relating to [the Terms of Use Agreement] or the relationship between us and you" and including "disputes about the validity or enforceability of this [Terms of Use Agreement] or the validity or enforceability of this Arbitration Section" would be submitted to binding arbitration upon the election of either party.  *See* ECF No. 29-2 at 5–6 (arbitration provision).  This arbitration agreement (the "Agreement") expressly defines Prosper as including "any originating bank involved in your transaction, and each of their respective parents, subsidiaries, affiliates, predecessors, successors, and assigns."  *Id.*

Mr. Bey's Account was originated by WebBank, with Prosper as loan servicer, on November 24, 2017.  *See* ECF No. 29-9 at ¶ 13.  Shortly thereafter, WebBank assigned the Account to Prosper.  *Id.* at ¶ 14.  Mr. Bey made payments on the Account for a time, but then defaulted, and Prosper charged off the Account in August 2018.  *Id.* at ¶ 25.  Prior to charging off the Account, Prosper "transferred [the Account] into a securitization trust through a series of transaction[s]." *Id.* at ¶¶ 17–24.  Finally, "pursuant to the terms and conditions of the Purchase and Sale Agreement dated November 8, 2017" between Prosper and Crown, Prosper sold the Account to Crown on

September 13, 2018, transferring to Crown "all rights, title and interest in and to" the Account. *See id.* at ¶ 26;  ECF No. 29-4.  Importantly, the Purchase and Sale Agreement provides that Crown would receive (1) "the right to a complete copy of each COL Document" (with COL Document defined as "any application, borrower agreement, note, loan agreement, disclosure document, billing statement, notice, correspondence or other material document embodying such COL [charged-off loan]") and (2) "all rights and remedies of such Seller [i.e. Prosper] against each Borrower [i.e. Mr. Bey] under or in relation to the related COL Documents."  ECF No. 29-9, Ex. 3 at 2, 5.

Mr. Bey disputes whether Crown has presented competent evidence that the assignment of the Account from Prosper to Crown in fact occurred.  *See* ECF No. 33 at 13–15.  Mr. Bey's argument rests primarily on the alleged inadmissibility or unreliability of (1) the "Bill of Sale," which purports to memorialize the transfer of Prosper's interest in the Account to Crown, *see* ECF No. 29-4;  (2) the "Certificate of Loan Sale," which purports to memorialize the transfer of the Account from WebBank to Prosper, *see* ECF No. 29-8;  and (3) the Declaration of John Goldston, a Prosper employee, and attached exhibits, which purport to trace the complete chain of transactions from WebBank's origination of the Account to its ultimate sale by Prosper to Crown. *See* ECF No. 29-9.

Having reviewed the evidence contested by Mr. Bey, the Court finds that it is competent and admissible for purposes of resolving the present Motion to Compel Arbitration.  In short, Mr. Bey's objections fail because hearsay statements that are capable of admission at trial may be considered on summary judgment and because the business records at issue fall within an exception to the rule against hearsay, specifically Federal Rule of Evidence 803(6).  *See Shelton v. Univ. of Med. & Dentistry*, 223 F.3d 220, 223 n.2 (3d Cir. 2000) ("In this circuit, hearsay

statements can be considered on a motion for summary judgment if they are capable of admission at trial.") (citation omitted); *Sweiger v. Calvary Portfolio Servs., LLC*, Civil Action No. 2:11-cv-1631, 2012 U.S. Dist. LEXIS 73909, at *10–*11 (W.D. Pa. May 29, 2012) (Hornak, C.J., then-J.) (rejecting challenge to evidence from third party showing chain of assignment because affidavit satisfied Federal Rule of Evidence 803(6)).

Furthermore, the alleged discrepancy identified by Mr. Bey in the chain of assignments—specifically that the Goldston Declaration states the transfer of the Account from WebBank to Prosper occurred on November 28, 2017, whereas the Certificate of Loan Sale states the transfer occurred on September 11, 2018, *see* ECF No. 33 at 14—fails to raise a genuine dispute. That is, whether the transfer from WebBank to Prosper of all rights and title to the Account was fully and finally competed on November 28, 2017 or September 11, 2018, Prosper held all right and title to the Account as of September 13, 2018, i.e. the date Prosper assigned the Account to Crown. *See* ECF No. 29-4 (Bill of Sale). Finally, the Court finds that any delay in Crown's production of the Goldston Declaration, ECF No. 29-9, was harmless, given that (1) before the close of discovery, Crown informed Mr. Bey the declaration would be produced, (2) the Court did not issue a briefing schedule for Crown's Motion until about two months after the close of discovery, and (3) Mr. Bey did not seek additional time or seek leave to conduct additional discovery during the time between the close of discovery and the Court issuing the briefing schedule. *See* Fed. R. Civ. P. 37(c)(1); *see also* ECF No. 35 at 4 n.10.

## IV. Discussion

The only question for the Court to decide is "whether Plaintiff and Defendant (as the assignee of Prosper) agreed to resolve this dispute in arbitration." ECF No. 18. According to Mr. Bey, this question should be answered in the negative because Pennsylvania's Consumer Discount

5

Company Act ("CDCA"), 7 Pa. Stat. § 6214.I, provides that "[a] licensee [like Prosper] may not sell contracts [like the Account] to a person or corporation not holding a license under this act [like Crown] without the prior written approval of the Secretary of Banking."  As such, according to Mr. Bey, Crown may not enforce the arbitration agreement.  However, the Court concludes that, under applicable severability principles, any alleged problem under the CDCA with the assignment of the Account is insufficient to block enforcement of the Agreement.  Thus, Crown's Motion to Compel Arbitration will be granted.

"The FAA 'place[s] arbitration agreements on equal footing with all other contracts' by requiring courts to 'enforce [such] agreements according to their terms.'"  *Singh v. Uber Techs, Inc.*, 939 F.3d 210, 214 (3d Cir. 2019) (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)).  This principle also applies to so-called "delegation" clauses, which are provisions that place arbitrability questions in the hands of the arbitrator.  *See id.* at 215 (citing *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70, 72 (2010)).  Thus, "in deciding whether a party may be compelled to arbitrate under the FAA," a district court must determine "'(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'"  *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (quoting *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 527 (3d Cir. 2009)).

In considering the first question—whether there is a valid arbitration agreement—it is important to note that "an arbitration clause is 'severable' and independently enforceable from the rest of the contract in which it is contained."  *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds,* 974 F.3d 386, 397 (3d Cir. 2020) (citing *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000)).  This severability rule means that "a party cannot avoid arbitration by

attacking the contract containing the arbitration clause as a whole (the 'container contract'). Rather, the party opposing arbitration must challenge 'the arbitration clause itself.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 403 (1967)).

Furthermore, there is a distinction between a dispute as to the *formation* of the container contract (which is a question for the court in the first instance) and a dispute as to its *validity* or *enforceability* (which, if within the scope of the arbitration/delegation clause, should be referred to arbitration). *See id.* at 397–98 (noting that the Supreme Court has drawn "a distinction between, on the one hand, questions about the validity or enforceability of an arbitration provision in an existing contract and, on the other hand, questions about whether an agreement 'was ever concluded' in the first place") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 n.2 (2010)); *see also Buckeye Check Cashing v. Cardegna,* 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded.").

Thus, for example, the Supreme Court in *Buckeye* concluded that, because a dispute as to whether state law rendered an agreement void did not implicate the formation of the container contract, the merits of the parties' dispute (including whether the container contract was valid) should be submitted to arbitration. *See* 546 U.S. at 446, 449 (concluding that "whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."). Applying these same principles, the United States Court of Appeals for the Third Circuit concluded in *MXM* that a dispute as to whether a party's assent to a container contract was obtained by fraud was a question of contract formation that a court should decide in the first instance. *See* 974 F.3d at 400–01 (noting that "[l]ack of assent to the container contract necessarily implicates the status of the

7

arbitration agreement, when the container contract and the arbitration provision depend on the same act for their legal effect.") (citing *Sandvik*, 220 F.3d at 109, 111).  Put another way, disputes as to whether a party actually assented to a container contract are legally distinct from whether applicable state law renders a container contract invalid.  The former calls into question whether any agreement to arbitrate was ever formed, whereas the latter, because an arbitration agreement is severable, does not.

Keeping these principles in mind, the Court finds that Mr. Bey's effort to resist arbitration, although artfully framed, raises only a dispute as to the validity of the assignment as a whole under state law but fails to either (a) implicate the formation of the assignment or (b) directly attack the arbitration or delegation provisions.  That is, Mr. Bey does not meaningfully dispute that a valid arbitration agreement was formed between himself and Prosper.  Nor does he meaningfully dispute that Prosper assigned the Account and Agreement to Crown.[2]  Rather, his opposition to Crown's Motion instead targets whether the assignment of the Account and Agreement from Prosper to Crown was valid under the CDCA.[3]  This is nothing more than a subtle variation on the question that the Supreme Court addressed in *Buckeye*, in which the Court ultimately rejected the position that a state law rendering a container contract void *ab initio* makes an otherwise valid arbitration agreement unenforceable.  *See* 546 U.S. at 447–8.

---

[2] That is, Mr. Bey does not meaningfully dispute that Proper agreed to assign the Account to Crown.  Whether that assignment was valid under Pennsylvania law—and thus whether Crown is entitled to attempt to collect the debt owed under the Account—is a separate question.

[3] Mr. Bey's opposition relies heavily on decisions issued by a district court in the Middle District of Pennsylvania in *Zirpoli v. Midland Funding LLC*.  *See* ECF No. 33 at 4–6;  *see also* ECF Nos. 33-1 (attaching *Zirpoli*, Civil Action No. 1:19-cv-01428, at Doc 31 (M.D. Pa. July 15, 2021)) and 36-1 (attaching *Zirpoli*, 2021 U.S. Dist. LEXIS 125923 (M.D. Pa. July 7, 2021)).  Although the court in *Zirpoli* dealt with a factual scenario like that presented here—i.e. a dispute as to the enforceability of an arbitration clause based on an assignment allegedly rendered invalid by the CDCA—in resolving the dispute it did not consider or apply the Supreme Court's severability jurisprudence, instead focusing on whether the container contract was validly assigned as the dispositive question on the issue of arbitrability.  However, *Buckeye* makes clear that severability is a threshold issue and, as such, a state law that renders a container contract invalid does not defeat an otherwise valid and enforceable arbitration agreement.  Thus, the Court does not find the district court opinions in *Zirpoli* relied on by Mr. Bey to be persuasive.

Thus, the Court concludes the Agreement was a valid agreement to arbitrate between Mr. Bey and Prosper, and that Prosper assigned the Agreement to Crown. Furthermore, because the Agreement encompasses "any dispute, claim, or controversy…arising from or relating to this [Terms of Use Agreement] or the relationship between us and you," and because the Agreement also delegates "disputes about the validity or enforceability of this [Terms of Use Agreement] or the validity or enforceability of this Arbitration Section" to the arbitrator, the Court also finds that the merits of Mr. Bey's underlying claims against Crown fall within the scope of the Agreement. Therefore, Crown's Motion to Compel Arbitration will be granted.

## V.      Conclusion

For the reasons set forth above, Defendant Crown Asset Management, LLC's Renewed Motion to Compel Arbitration, or Alternatively, Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), *see* ECF No. 29, is hereby GRANTED IN PART AND DENIED IN PART as follows:

1. Crown's Motion to Compel Arbitration is GRANTED. Therefore, IT IS HEREBY ORDERED that Mr. Bey's claims are compelled to arbitration and that this case is STAYED and administratively CLOSED pending arbitration. By administratively closing cases, courts remove cases from their active files without a final adjudication. Administrative closure is a docket control device used by the Court for statistical purposes and does not prejudice the rights of the parties in any way.

2. IT IS FURTHER ORDERED that the parties shall file a Joint Status Report regarding the arbitration on or before December 8, 2021, or within one week of the completion of arbitration, whichever occurs sooner; and

3. Crown's Motion to Dismiss is DENIED AS MOOT.

IT IS SO ORDERED.

     DATED this 8th day of September, 2021.

                      BY THE COURT:


                      /s/ Christy Criswell Wiegand
                      CHRISTY CRISWELL WIEGAND
                      United States District Judge


cc (via ECF email notification):

All Counsel of Record